MERRITT LEACH

*v.*

HARRIET G. LEACH et al.

[Decided April 3d, 1907.]

1. Where a special order was made in a case on notice in regard to the signing of testimony on reference to a master, and that order has not been appealed from, exceptions to the testimony on the ground that it had not been read over or signed by the witnesses cannot be considered as well founded on exceptions to the master's report.

2. Where exceptant was not aggrieved by reason of the failure of a

master in chancery to report on a matter as directed, his exceptions on account thereof will be overruled.

3. The law authorizing the payment of a sum in gross to the holder of a life estate, out of the proceeds of land sold on foreclosure proceedings, on consent of the person entitled thereto (*Chancery Act, Revision, P. L. 1902 pp. 531, 532 § 60*), passed subsequent to the marriage of complainant, the remainderman, to one of the defendants and after his title accrued, is not unconstitutional as depriving him of a vested right without his consent, since the amount to be paid to the life tenant is only the value of her interest, and the remainderman's rights beyond that are secure.

On exceptions to master's report.

*Mr. James Steen,* for the exceptant.

*Mr. Arthur H. Lovell,* for the complainant.

EMERY, V. C.

In this case, lands to which the wife had title, were sold in a foreclosure suit, and the surplus ($551.50) over payment of the mortgage was paid into court. The husband had an estate by the curtesy initiate in the lands, and on application of the wife for the payment to her of the entire surplus in court, I decided that the respective interests of the husband and wife in the lands sold, and therefore in the proceeds of sale, were as follows, namely, that the wife had an estate for her life in the lands with remainder to the husband for his life, if he survived the wife, and then with remainder over to the issue in fee. On the death of the husband during the wife's life, the entire sum converted is to be paid to the wife. See my opinion in *Leach* v. *Leach, 69 N. J. Eq. (3 Robb.) 620,* referring to the cases. The Chancery act (*Revision. P. L. 1902 pp. 531, 532 § 60*) provides that when money is paid into court on foreclosure proceedings, the owner of any estate for life may apply for the payment of a gross sum in lieu of the estate, and that the court shall direct the payment of such gross sum as shall be deemed a just and reasonable satisfaction for said estate for life, and which the person entitled shall consent in writing to accept in lieu thereof. The wife applied for the immediate payment to her of all the money to which she was en-

titled, but the husband did not consent to the payment of any gross sum to the wife, or to take any gross sum in lieu of his interest. He insisted that only the interest on the sum in court should be paid to the wife. Inasmuch as the statute directing payment to the life tenant of a gross sum did not require the consent of the persons interested in remainder, I held that the payment might be made without such consent and directed that it should be referred to a master to ascertain the amount that should be paid to the wife for her life estate in the lands, and that the balance be invested during the lives of the husband and wife, for the benefit of the wife during their lives, and for the further benefit of the husband during his life, if he survived the wife, and that on the death of the husband during the wife's life, she should be entitled to the principal sum invested. The wife has filed in court her consent in writing under the statute to accept a gross sum in lieu of her life estate. The master has reported that the gross sum to be awarded to the wife is $319.93.

Three exceptions are filed to the report.

*First.* That the testimony of the witnesses has not been read over or signed by them since the taking of the same. This exception is not well founded, for the reason that a special order was made in the case on notice, in reference to the signing of the testimony, and that order has not been appealed from.

The *second* exception is that the master has not complied with one direction in the order of reference, namely, fixing the value of the use and occupancy of the premises required by the order. This occupancy was that of the husband who had been in possession of the premises. The master has not made any report against the husband by reason of the value of this occupancy, but has simply reported the receipts for rents and payments. The husband is not aggrieved by reason of this failure to report on the value, and the exception must be overruled.

The *third* exception is really a reargument of the question decided on the former hearing, namely, whether the court has power, under the statute, to order the payment of a gross sum to the wife out of the proceeds of sale as the value of her life estate against the consent of the husband as entitled to a contingent estate in remainder. This argument is, perhaps, irregular, but

inasmuch as a question of some importance, involving the correctness of that decision, is now raised, and was not raised at the original hearing, and this hearing is virtually an application for final decree in the cause, on the exceptions, I will consider the case as open for reargument on the new point now raised, rather than put the parties to the expense or delay of a formal application for rehearing or an appeal for the purpose of arguing that question. The point is that the husband and wife were married in 1878 and before the passage of the law authorizing the payment of a sum in gross to the wife, out of the proceeds of sale as the value of her life estate, and that the law was passed after the husband's title accrued. It is now claimed that as against the husband, this provision of the latter law is unconstitutional, as depriving him of a vested right in property and that it cannot be enforced against his consent. There is no doubt that the conversion of the lands into money by the sale under foreclosure is a valid conversion under a superior right as to all persons, and the question therefore is whether, on the conversion of lands into money on a forced sale in foreclosure, the legislature has the right to terminate, at its discretion, the period when the money resulting from the sale, and the interest therein of a person *sui juris,* shall cease to be land or to be held as if it were land. The general course of legislation on this subject in the different states has recognized (and without exception, so far as I can find) the power of the legislature to fix the terms and conditions on which money resulting from the conversion of lands by sales in legal proceedings should be finally disposed of as money to the parties who were interested in the lands and legally capable of receiving the proceeds as money. For example, *Scrib. Dow. (2 ed.) pp. 653, 654,* gives the legislation in the different states on the payment to the widow of a gross sum out of the proceeds of sale of lands in which there was a dower right. Some of them, including New York and New Jersey, give the option to the widow alone to accept a gross sum out of the proceeds of sale, or to take the annual interest. Other states, by legislation, require the consent of all parties interested in the funds before the gross sum can be given. In some others, the determination and payment of the gross sum on the application of any party interested in the proceeds is left to the discre-

tion of the court. In *2 Freem. Part. p. 726 § 549,* he says that on the sale and distribution of proceeds of sale of lands in partition, the court has the power (among other things) to determine the value of estates for life or years, and of all future estates, vested and contingent, and to direct the amount to be paid to the holders of each of such estates. I find no cases holding that the legislature has not this power relating to the continuance of interests in the proceeds of sale as money, and the power to terminate this by fixing the present value of the estates of parties *sui juris* who are interested in the money. In our state, as in New York, the option is given to the tenant for the life estate or for years alone, and it therefore requires her assent alone.

There is no question here of the deprivation of property, for the amount to be paid to the wife is only the value of her interest, and the husband's rights beyond that are secure. So far as the mere question of property right is concerned, the conversion of lands into money, under a superior right, to which the tenure of the lands was subject, terminates *ipso facto* the precise property right in the lands, and the proceeds of sale in strict legal theory are held not as lands, but rather as in lieu of the lands, for the ultimate purpose of compensating the parties interested in the lands. The money cannot in fact be lands, and as money, is subject to contingencies (loss, shrinkage, &c.), from which estates in the lands itself would be free. Interest on the money during life is one way of giving compensation to the life tenant, but it is not the only method. A gross sum for the value of the life estate is another way, and it is within the power of the legislature either to fix this method of compensation or to confer upon the courts the power of fixing it and its terms and conditions. This selection of the methods for compensation is a necessary result of the lawful conversion of the lands into money, by the superior right, and is an incident to which the estates in the lands are subject. In *Ross v. Adams, 28 N. J. Law (4 Dutch.) 161, 179 (1859),* where the purchase price of lands taken in eminent domain proceedings was paid into court, the supreme court, in the absence of any statute, directed payment of sums in gross for the value of all the interests where the parties were *sui juris* and could receive it. The court of errors and appeals, *1 Vr. 504,*

reversed the judgment on the point that the interests were not properly declared by the supreme court, and that the husband, to whom a payment was directed, was not entitled to any interest in the lands or proceeds. The judgment reversing directed the investment of the funds, but no question seems to have been made in the decision as to the power to direct a gross sum to be paid out of the proceeds, and the form of the judgment, which may have been by consent, cannot be considered as an adjudication overruling the opinion of the supreme court as to the power to direct a gross sum. It may, however, have the effect of rendering the opinion of the supreme court an *obiter dictum* and of confining its effect on the point now in question to the weight of the opinion of the judges delivering it. This aspect of it, when the question of the constitutionality of a law is raised, is important, for it shows that learned judges appeared to have no doubt of the validity of such procedure, even in the absence of statute, and this circumstance, taken in connection with the general course of legislation and practice under it, apparently unquestioned in this state as well as others, is sufficient to solve any doubtful question in favor of the validity of the law. On full consideration, therefore, of this point now raised, I think the conclusion reached on the original hearing was correct, and that this court has the right, under this legislation, and on the option of the life tenant alone, who is *sui juris,* to terminate the holding of the entire proceeds of sale in court, and to direct the payment to her in gross of the sum which has been fixed as the present value of her interest. The exceptions will be overruled, with costs, and a final decree be entered in accordance with the opinions.